# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| KOCH SUPPLY & TRADING, L.P., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| BP PRODUCTS NORTH AMERICA, INC., | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

Case No.:  08−cv−03362

The Honorable James B. Zagel

## DEFENDANT BP PRODUCTS NORTH AMERICA, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF
## ITS RULE 12(b)(6) MOTION TO DISMISS

Richard C. Godfrey, P.C.
David J. Zott, P.C.
Andrew A. Kassof
Katheleen Ehrhart
Kathryn F. Taylor
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601-6636
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

*Attorneys for Defendant*
*BP Products North America, Inc.*

Date:   August 6, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

THE COMPLAINT'S FACTUAL ALLEGATIONS.....................................................2

ARGUMENT .......................................................................................................................5

I.     KOCH FAILS TO STATE A MONOPOLIZATION CLAIM BECAUSE
BPPNA NEVER HAD MONOPOLY POWER. ...............................................5

       A.    Koch Fails To Allege That BPPNA Caused A Lasting Structural Change
In The TET propane Market. ....................................................................6

       B.    Koch Cannot Allege That BPPNA Possessed Durable Market Power...................9

       C.    Without Significant Barriers To Entry, BPPNA Could Not And
Did Not Achieve Any Monopoly Power. ..............................................11

II.    WITHOUT ANY DANGEROUS PROBABILITY OF MONOPOLIZATION,
KOCH ALSO CANNOT STATE A CLAIM FOR
ATTEMPTED MONOPOLIZATION...............................................................12

III.   BECAUSE KOCH CAN SEEK A REMEDY UNDER THE CEA,
THEIR ANTITRUST CLAIMS SHOULD BE DISMISSED. ..........................14

IV.   KOCH'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ....................16

CONCLUSION..................................................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*,
    881 F.2d 1396 (7th Cir. 1989) ...................................................................... 7

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*,
    141 F.3d 947 (9th Cir. 1998) ...................................................................... 10

*Am. Academic Suppliers, Inc. v. Beckley-Cardey, Inc.*,
    922 F.2d 1317 (7th Cir. 1991) .................................................................... 12

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
    300 F.3d 620 (5th Cir. 2002) ........................................................................ 5

*Apex Oil Co. v. DiMauro*,
    713 F. Supp. 587 (S.D.N.Y. 1989) .......................................................... 6, 8, 9

*Ashkanazy v. I. Rokeach & Sons, Inc.*,
    757 F. Supp. 1527 (N.D. Ill. 1991) ............................................................... 9

*Axiom Advisers & Consultants, Inc. v. School Innovations & Advocacy Inc.*,
    No. 2:05 CV 02395, 2006 WL 1049997 (E.D. Cal. Mar. 20, 2006)............................... 13

*Barr Labs., Inc. v. Abbott Labs.*,
    978 F.2d 98 (3d Cir. 1992)......................................................................... 13

*Baseball At Trotwood, LLC v. Dayton Prof'l Baseball Club, LLC*,
    113 F. Supp. 2d 1164 (S.D. Ohio 1999) ......................................................... 6

*Berkey Photo Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979).......................................................................... 6

*Borough of Landsdale v. Phila. Elec. Co.*,
    692 F.2d 307 (3d Cir. 1982)......................................................................... 11

*C.A.T. Indus. Disposal, Inc. v. Browning-Ferris Indus., Inc.*,
    884 F.2d 209 (5th Cir. 1989) ...................................................................... 12

*Caller-Times Publ'g Co. v. Triad Commc'ns, Inc.*,
    826 S.W.2d 576 (Tex. 1992).................................................................... 5, 12

*CFTC v. BP Products North America, Inc.*,
    No. 06-cv-3503 (N.D. Ill. Oct. 31, 2007) ................................................... 1, 3

K&E 13094664.5

**Page(s)**

*Colo. Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.*,
  885 F.2d 683 (10th Cir. 1989) ....................................................... 6, 9, 10

*D. Ginsberg & Sons, Inc. v. Popkin*,
  285 U.S. 204 (1932) ........................................................................ 15

*Deauville Corp. v. Federated Dep't Stores, Inc.*,
  756 F.2d 1183 (5th Cir. 1985) ......................................................... 9

*Dial A Car, Inc. v. Transp., Inc.*,
  82 F.3d 484 (D.C. Cir. 1996) ........................................................... 13

*Endsley v. City of Chi.*,
  230 F.3d 276 (7th Cir. 2000) ........................................................... 5

*Garot Anderson Mktg. Inc. v. Blue Cross & Blue Shield United of Wis.*,
  772 F. Supp. 1054 (N.D. Ill. 1990) ................................................. 7

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
  832 S.W.2d 39 (Tex. 1992) .............................................................. 17

*Hoarel Sign Co. v. Dominion Equity Corp.*,
  910 S.W.2d 140 (Tex. Ct. App. 1995) ........................................... 2, 17

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  545 N.E.2d 672 (Ill. 1989) .............................................................. 17

*In re TransOcean Tender Offer Sec. Litig.*,
  427 F. Supp. 1208 (N.D. Ill. 1977) ................................................ 16

*Ind. Grocery, Inc. v. Super Valu Stores Inc.*,
  864 F.2d 1409 (7th Cir. 1989) ......................................................... 5

*Ind. Telecom Corp. v. Ind. Bell Tel. Co.*,
  No. 97-1532-C, 2001 WL 1168169 (S.D. Ind. Sept. 25, 2001) ....... 11

*Institutional Foods Packing, Inc. v. Creative Prods., Inc.*,
  No. 89 C 4499, 1992 WL 111133 (N.D. Ill. May 12, 1992) ........... 11

*Jame Fine Chems., Inc. v. Hi-Tech Pharm. Co.*,
  No. 00 C 3545, 2007 WL 927976 (D.N.J. Mar. 27, 2007) ............. 10

*Johnson v. Hosp. Corp. of Am.*,
  95 F.3d 383 (5th Cir. 1996) ............................................................. 5

**Page(s)**

*Kovilic v. City of Chi.*,
    813 N.E.2d 1046 (Ill. App. Ct. 2004) ............................................................ 17

*Lektro-Vend Corp. v. Vendo Co.*,
    660 F.2d 255 (7th Cir. 1981) ....................................................................... 12

*Lerma v. Univision Commc'ns, Inc.*,
    52 F. Supp. 2d 1011 (E.D. Wis. 1999)......................................................... 7

*Lindell v. Huibregtse*,
    No. 05-4627, 2006 WL 3077484 (7th Cir. Oct. 31, 2006) ............................ 10

*Matter of Hartman Bros. Const. Corp.*,
    835 F.2d 1215 (7th Cir. 1987) ..................................................................... 15

*Metro Mobile CTS, Inc. v. NewVector Comm'ns*,
    661 F. Supp. 1504 (D. Ariz. 1987), *aff'd*, 892 F.2d 62 (9th Cir. 1989)........... 11

*Nesby v. Country Mut. Ins. Co.*,
    805 N.E.2d 241 (Ill. App. Ct. 2004) ...................................................... 2, 17

*Nsight, Inc. v. Peoplesoft, Inc.*,
    No. 04 C 3836, 2005 WL 3299164 (N.D. Ind. Aug. 5, 2005) .............. 6, 11, 13

*Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*,
    179 F.3d 523 (7th Cir. 1999) ....................................................................... 10

*Oxford Global Resource, Inc. v. Weekly-Cessnum*,
    No. Civ.A. 3:04-CV-0330-N, 2004 WL 2599898 (N.D. Tex. Nov. 12, 2004)................ 14

*Republic Tobacco, L.P. v. North Atlantic Trading Co.*,
    No. 98 C 4011, 1999 WL 261712 (N.D. Ill. April 9, 1999) ...................... 11, 14

*Ricci v. Chi. Mercantile Exch.*,
    447 F.2d 713 (7th Cir. 1971), *aff'd*, 409 U.S. 289 (1973) ............................. 16

*Roberts v. Whitfill*,
    191 S.W.3d 348 (Tex. App. 2006)................................................................. 5

*S.S.W., Inc. v. Air Transp. Ass'n of Am.*,
    191 F.2d 658 (D.C. Cir. 1951)..................................................................... 15

*Santana Prods., Inc. v. Sylvester & Assocs.*,
    121 F. Supp. 2d 729 (E.D.N.Y. 1999) ........................................................... 6

K&E 13094664.5

**Page(s)**

*SCFC ILC, Inc. v. Visa USA, Inc.*,
    36 F.3d 958 (10th Cir. 1994) ....................................................................... 6

*Schaefer v. First Nat'l Bank of Lincolnwood*,
    326 F. Supp. 1186 (N.D. Ill. 1970), *aff'd*, 509 F.2d 1287 (7th Cir. 1975) ............ 2, 15, 16

*Scott v. Galusha*,
    890 S.W.2d 945 (Tex. App. 1994)................................................................. 5

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
    655 N.E.2d 1065 (Ill. App. Ct. 1995) ...................................................... 2, 17

*Smith v. Groover*,
    468 F. Supp. 105 (N.D. Ill. 1979) ............................................................. 16

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)................................................................................ 12

*Stonebridge Life Ins. Co. v. Pitts*,
    236 S.W.3d 201 (Tex. 2007)..................................................................... 17

*Taylor Publ'g Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) ................................................................. 2, 10

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    687 F. Supp. 832 (S.D.N.Y. 1988)............................................................... 6

*Terminal Warehouse Co. v. Penn. R. Co.*,
    297 U.S. 500 (1936)................................................................................ 15

*Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
    21 F. Supp. 2d 664 (E.D. Tex 1998)........................................................ 2, 17

*Tex. Commercial Energy v. TXU Energy, Inc.*,
    No. C-03-249, 2004 WL 1777597 (S.D. Tex. June 24, 2004)............................. 5

*Tri-Tronics Co v. MacGregor & Co.*,
    No. 90 C 0630, 1990 WL 114738 (N.D. Ill. July 25, 1990) ............................. 15

*U.S. Navigation Co. v. Cunard S.S. Co.*,
    284 U.S. 474 (1932)................................................................................ 15

*United States v. BP Products North America, Inc.*,
    No. 07-CR-683 (N.D. Ill. Oct. 30, 2007)...................................................... 3

K&E 13094664.5

**Page(s)**

*United States v. Grinnell Corp.,*
    384 U.S. 563 (1966) ............................................................................. 2, 5

*Villarreal v. Grant Geophysical, Inc.,*
    136 S.W.3d 265 (Tex. Ct. App. 2004) ................................................ 17

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,*
    810 F.2d 243 (D.C. Cir. 1987) ......................................................... 9, 11

**Statutes**

7 U.S.C. § 25(a)(1)(A) ............................................................................. 17

7 U.S.C. § 25(a)(1)(B) ............................................................................. 17

7 U.S.C. § 25(a)(1)(C) ............................................................................. 17

7 U.S.C. § 25(a)(1)(D) ........................................................................ 16, 17

Tex. Bus. & Com. Code § 15.04 ............................................................... 5

**Other Authorities**

ABA Section of Antitrust Law, Antitrust Law Developments (6th ed. 2007) ...... 9, 11, 13

Am. Jur. 2d *Restitution and Implied Contracts* (2008) ........................... 2, 17

Areeda, Phillip & Herbert Hovenkamp,
    Antitrust Law (1996) .................................................................... 14

Easterbrook, Frank H.,
    *Monopoly, Manipulation, and the Regulation of the Futures Markets,*
    59 J. Bus. S103 (1986) .................................................................... 13

Kern, John,
    *Price Manipulation in the Commodity Futures Markets:  A Reexamination of*
    *the Justifications for Simultaneous Causes of Action Under the CEA*
    *and the Sherman Act,*
    34 UCLA L. Rev. 1305 (1987) ....................................................... 16

S. 2578, 93d Cong., 1st Sess. § 20 (1973) ............................................... 16

S. 2837, 93d Cong., 1st Sess. § 505 (1973) ............................................. 16

K&E 13094664.5

**Page(s)**

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 10(c)................................................................................................................ 10

K&E 13094664.5

## INTRODUCTION

BP Products North America, Inc. ("BPPNA") has admitted to a short-lived, ill-conceived manipulation of the propane trading market during February 2004 in violation of the Commodity Exchange Act ("CEA").[1]  BPPNA and affiliated entities have paid a stiff price for its traders' behavior — $303,000,000 — including civil and criminal penalties and a $53,503,000 restitution fund to compensate any parties harmed by the manipulation.  (Deferred Prosecution Agreement ("DPA") ¶¶ 7, 9, 22, Docket No. 82, *CFTC v. BP Products North America, Inc.*, No. 06-cv-3503 (N.D. Ill. Oct. 31, 2007).); Consent Order for Permanent Inj. ("Consent Order") ¶ 87(a), Docket No. 82, *CFTC v. BP Products North America, Inc.*, No. 06-cv-3503 (N.D. Ill. Oct. 31, 2007).)

In its Complaint, plaintiff Koch Supply & Trading, L.P. ("Koch") attempts to transform BPPNA's brief market manipulation into an antitrust case.  Koch asserts three claims: monopolization and attempted monopolization under the Sherman Act (Count I); monopolization and attempted monopolization under the Texas Free Enterprise and Antitrust Act of 1983 ("TFEAA") (Count II); and unjust enrichment (Count III).  Each fails to state a claim.

*First*, Koch bases its monopolization claims under both the Sherman Act and the TFEAA on an allegation that BPPNA cornered and manipulated the February 2004 market for TET propane (propane transported in the TEPPCO pipeline system).  (Compl. ¶¶ 30-90; Statement of Facts ("SOF") (Attach. A to Compl.) ¶ 1.)  But Koch cannot establish the *sine qua non* of an antitrust monopolization claim:  monopoly power.  *See United States v.*

---

[1] Nothing herein is intended to contradict in any way the statements agreed to by BPPNA in the October 25, 2007 Deferred Prosecution Agreement, and the statements in the Deferred Prosecution Agreement or the CFTC Consent Order govern over any statements made herein.

*Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  As Koch's complaint concedes, BPPNA's trading conduct caused no structural change to the TET propane market, did not last for any sufficient duration, and did not prevent entry into the market.  Monopoly power requires all three factors. Koch's own allegations make clear they cannot establish even one.

*Second*, attempted monopolization requires a dangerous probability of achieving monopoly power.  *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir. 2000).  Based on Koch's own allegations, BPPNA had no probability, much less a "dangerous probability," of achieving any monopoly power.

*Third*, the CEA is the statute governing the alleged conduct at issue.  When Congress provides a specific statutory remedy, such as the CEA, it controls over a general remedy, such as the antitrust laws.  *Schaefer v. First Nat'l Bank of Lincolnwood*, 326 F. Supp. 1186, 1191 (N.D. Ill. 1970), *aff'd*, 509 F.2d 1287 (7th Cir. 1975).  Thus, even if Koch's antitrust claims were otherwise valid — and they are not — they should be dismissed.

*Finally*, the CEA also precludes Koch's equitable claim for unjust enrichment.  No claim can lie for unjust enrichment when the CEA provides for an independent claim and remedy at law for the conduct at issue.  *See Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) (citing *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. App. Ct. 1995)); *Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex 1998) (citing *Hoarel Sign Co. v. Dominion Equity Corp.*, 910 S.W.2d 140, 143 (Tex. Ct. App. 1995)); 66 AM. JUR. 2D *Restitution and Implied Contracts* § 30 (2008).

## THE COMPLAINT'S FACTUAL ALLEGATIONS

On June 28, 2006, the Commodity Futures Trading Commission ("CFTC") filed a civil action against BPPNA for injunctive relief and money damages for violations of the CEA.  The

2

CFTC alleged that BPPNA manipulated the price of TET physical propane during February 2004. (CFTC Compl. ¶ 1, Docket No. 1, *CFTC v. BP Products North America, Inc.*, No. 06-cv-3503 (N.D. Ill. June 28, 2006).) The United States Department of Justice also separately began investigating BPPNA's actions regarding February 2004 TET propane.

After the CFTC filed its complaint, direct and indirect propane purchasers filed copycat lawsuits across the country. On October 25, 2007, BPPNA and certain other affiliated entities entered into a deferred prosecution agreement with the United States Government, and BPPNA entered into a consent order settling the CFTC action. (DPA; Consent Order.) They agreed to the appointment of an independent monitor to oversee and ensure compliance with those agreements and to monitor "compliance controls as they pertain to applicable anti-manipulation and reporting provisions of the Commodity Exchange Act" and CFTC regulations. (DPA ¶ 23, Attach. B to DPA, Docket Nos. 6-7, *United States v. BP Products North America, Inc.*, No. 07-CR-683 (N.D. Ill. Oct. 30, 2007).) Under the agreements, the BP entities agreed to pay a criminal penalty of $100,000,000, a $25,000,000 contribution to the U.S. Postal Inspection Service Consumer Fraud Fund, a civil monetary penalty of $125,000,000, and $53,503,000 into a restitution fund to compensate those harmed by BPPNA's activities. (DPA ¶¶ 7-9, 22; Consent Order ¶ 87(a).)

As part of the agreements, BPPNA admitted that in February 2004 certain BPPNA traders manipulated the February 2004 propane market for "TET propane" — that is, propane transported in the TEPPCO pipeline system. (SOF ¶ 1.) Specifically, BPPNA agreed that it purchased more TET propane for February 2004 delivery than it needed in an attempt to create an artificially high price for TET propane, and thereby force counterparties to pay inflated prices to cover their purchases at the end of February. (SOF ¶¶ 2, 32, 38.) BPPNA's plan failed

3

miserably.  (SOF ¶¶ 58, 69, 72.)  While some counterparties covered their needs at the inflated price, others never covered or just waited to purchase their TET propane until March, after market prices collapsed.  (SOF ¶ 72.)

Four years after the conduct at issue, and four months after BPPNA entered into settlement agreements with the government, Koch filed its complaint attaching and incorporating the Statement of Facts to which BPPNA admitted.  (*See e.g.* Compl. ¶ 91; Attach. A to Compl.) Koch describes BPPNA's plan as an attempt to (i) acquire 5 million barrels of TET propane in February, (ii) force a "short run" increase in price, (iii) liquidate its inventory at those higher prices by the end of February, and (iv) roll the remaining TET propane into March and sell it at a loss.  (Compl. ¶¶ 36, 39, 43; SOF ¶¶ 32, 53.)

BPPNA's plan flopped.  As Koch alleges, inventories of TET propane steadily increased throughout February 2004.  (*See e.g.* Compl. ¶¶ 49, 51-52; SOF ¶¶ 45, 48.)  Imports streamed into the market to meet the increased demand created by BPPNA's conduct.  (Compl. ¶ 52; SOF ¶ 45.)  Unexpected ruptures in the TET pipeline and shifts in weather caused fluctuation in demand.  (*See* Compl. ¶¶ 49, 51; SOF ¶ 45.)  While the average price for TET propane increased somewhat during the month, the largest spike lasted only three days, from February 23 through February 25.  (Compl. ¶¶ 62-63, 68, 72, 80.)  As Koch admits, BPPNA "failed to make the anticipated profit" because BPPNA paid more to acquire its position in TET propane than it obtained via sales at inflated prices.  (Compl. ¶ 85.)  Ultimately, BPPNA could sell only 530,000 barrels in February and had to roll the remaining 4.4 million barrels into March at a significant loss.  (SOF ¶ 53.).  The plan devised by BPPNA's traders cost the company $10 million.  (*Id.* ¶ 72.)

## ARGUMENT

A handful of BPPNA employees concocted a plan to manipulate the February 2004 TET propane market.   The fleeting impact on the TET propane market was thoroughly investigated by the government and remedied.  Koch's complaint wrongly tries to transform a straight forward case of market manipulation into an antitrust violation.  Koch's own allegations, however, disprove any antitrust theory as a matter of law.

## I.     KOCH FAILS TO STATE A MONOPOLIZATION CLAIM BECAUSE BPPNA NEVER HAD MONOPOLY POWER.

BPPNA has admitted to a 36-day price manipulation of the TET propane market from February 5, 2004 to March 12, 2004.  (Compl. ¶ 91; SOF ¶ 1.)   Koch claims this admitted activity constitutes a monopolization claim under Section 2 of the Sherman Act and the TFEAA. A monopolization claim requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power." *Grinnell*, 384 U.S. at 570-71; *see also Endsley v. City of Chi.*, 230 F.3d 276, 282 (7th Cir. 2000).[2]

Monopoly power is the power to exclude competition or to control prices in a defined market.  *Ind. Grocery, Inc. v. Super Valu Stores Inc.*, 864 F.2d 1409, 1414 (7th Cir. 1989).  To be

---

[2] "Consistent with its foundation in federal law, the [TFEAA] provides that it is to be interpreted in harmony with federal judicial interpretations of comparable federal laws." *Caller-Times Publ'g Co. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576, 580 (Tex. 1992) (citing TEX. BUS. & COM. CODE § 15.04); *see also Scott v. Galusha*, 890 S.W.2d 945, 950 (Tex. App. 1994) (observing that "[Texas state courts] are required to construe the [TFEAA] in harmony with federal judicial interpretations of comparable federal antitrust statutes."); *Roberts v. Whitfill*, 191 S.W.3d 348, 354 (Tex. App. 2006) (same); *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002) (observing that "[e]ach provision of the [TFEAA] is modeled after a corresponding provision of federal antitrust law," and that "Texas courts have adopted federal standards for determining violations of the TFEAA").  Accordingly, this court need only analyze Koch's alleged antitrust violations under the Sherman Act. *Id.*; *see also Tex. Commercial Energy v. TXU Energy, Inc.*, No. C-03-249, 2004 WL 1777597, at *14 (S.D. Tex. June 24, 2004) (dismissing TFEAA claims after only considering Sherman Act claims); *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 n.7 (5th Cir. 1996) (noting its refusal to "separately analyze the plaintiffs' [Texas] state law antitrust claims" and Sherman Act claims).

actionable, monopoly power must be durable.  That is, a plaintiff must show that the alleged

monopolist caused a long-term structural alteration to the market, maintained the monopoly for a

sufficient period of time, and prevented others from entering the market.  *See e.g. Apex Oil Co. v.*

*DiMauro*, 713 F. Supp. 587, 600 (S.D.N.Y. 1989) (requiring a structural alteration to the relevant

market of more than "fleeting duration"); *Colo. Interstate Gas Co. v. Natural Gas Pipeline Co.*

*of Am.*, 885 F.2d 683, 695 (10th Cir. 1989) (merely acquiring the short-term ability to control

prices will not sustain a claim under § 2); *Nsight, Inc. v. Peoplesoft, Inc.*, No. 04 C 3836,

2005 WL 3299164, at *1 (N.D. Ind. Aug. 5, 2005) (dismissing § 2 claims where plaintiffs failed

to allege sufficient barriers to entry).  Koch not only fails to allege any of these essential

elements; its allegations disprove any monopolization claim as a matter of law.

  A. **Koch Fails To Allege That BPPNA Caused A Lasting Structural Change In The TET propane Market.**

  Section 2 of the Sherman Act "is aimed primarily not at improper conduct," but instead at

conduct that creates "a pernicious market structure in which the concentration of power saps the

salubrious  influence  of  competition."  *Apex Oil  Co.*,  713 F. Supp.  at  600;

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 838 (S.D.N.Y. 1988)

(dismissing monopoly claim) (quoting *Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263,

272 (2d Cir. 1979); *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 966 n.10 (10th Cir. 1994)

(difference between § 1 and § 2 is that the former does not require an alteration of market

structure).  Section 2 claims require an alteration of the market structure.  *E.g.*, *Apex Oil*,

713 F. Supp.  at  600;  *Baseball At Trotwood,  LLC  v.  Dayton Prof'l Baseball Club,  LLC*,

113 F. Supp. 2d 1164, 1174 (S.D. Ohio 1999) (dismissing plaintiff's antitrust claims where

"there [was] no allegation that the actions of the [d]efendants altered the market structure");

*Santana Prods., Inc. v. Sylvester & Assocs.*, 121 F. Supp. 2d 729, 736-37 (E.D.N.Y. 1999)

(same).  The Seventh Circuit follows this "structural analysis" for monopolization claims.  *See*

*e.g. A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1403 (7th Cir. 1989)

(monopolization was impossible due to the relevant market structure); *see also*

*Garot Anderson Mktg. Inc. v. Blue Cross & Blue Shield United of Wis.*, 772 F. Supp. 1054, 1059

(N.D. Ill. 1990); *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1025 (E.D. Wis.

1999).

Koch does not — and cannot — allege that BPPNA structurally altered the TET propane

market.  They accordingly cannot show the "monopoly power" required to state a Section 2

claim.  To the contrary, Koch's allegations establish the opposite: the nature of the propane

market made any structural alteration by BPPNA impossible.  By improper design, the BPPNA

traders' plan was to create and capitalize on a short term spike in TET propane prices.

First, Koch's complaint recognizes that BPPNA could only create a short term price spike

in February 2004, and that — even if its plan worked — it would be forced to sell accumulated

inventory at a loss in March.  As Koch's complaint states:

> In February 2004, the NGL[ ] trading bench entered into a strategy
> to create a long February-March spread. . . .  *The bench planned on
> holding a large portion of existing TET Mont Belvieu propane
> inventory.  It was believed that the resulting lack of supply at TET
> would drive up prompt prices, further widening the spread.  The
> bench would then liquidate its inventory at higher prompt prices
> before the end of February.*  It was expected that only a small
> portion of inventory would be rolled into March resulting in
> a minimal loss  against a substantial gain.

(Compl. ¶ 38 (emphasis in original).)  The complaint details some of the numerous sources of

supply available to defeat any would-be monopolist.  (*See e.g.* Compl. ¶ 52 (imports), ¶ 12

(non-TET propane).)

Second, the complaint describes how, coinciding with BPPNA's increased position, the

TET propane inventories continued to build through the month of February:

- "By February 16, 2004, the total TEPPCO system inventory increased to just over 3.3 million barrels." (*Id.* ¶ 49.)

- "The total TEPPCO system propane inventory on February 17, 2004 was just over 3.4 million barrels, and increased to just over 3.6 million barrels on February 20, 2004." (Compl. ¶ 56.)

- "Over the weekend of February 20 through February 22, 2004, the TEPPCO system propane inventory continued to increase, adding as much as 450,000 barrels of propane." (*Id.* ¶ 61)

- "Between February 20, 2004, and February 29, 2004, the TEPPCO system propane inventory continued to increase." (SOF ¶ 48.)

- "On February 26, 2004, the total TEPPCO system inventory increased to just over 4.3 million barrels of propane." (Compl. ¶ 77.)

Third, Koch alleges that imported propane was steaming to the Gulf Coast in February to meet the increased demand. (Compl. ¶ 52; SOF ¶ 45.)

Finally, the complaint recites other market factors beyond BPPNA's control that further impeded its ability to cause even a short term price spike. These included a pipeline rupture, (Compl. ¶ 49; SOF ¶ 45), and weather forecast changes, which had the affect of "reducing the demand and expected demand of TET propane." (Compl. ¶ 51; SOF ¶ 45.) As a result, just days after the short-lived spike in TET propane pricing, the price of TET propane fell precipitously. Far from any long-term structural change to the market, BPPNA's plan caused only a passing blip, and it was able to sell only a fraction of the inflated TET propane that it predicted. All-in-all it sold around 530,000 barrels in February, rolling 4.4 million barrels into March at a $10 million loss. (SOF ¶¶ 53, 58, 69, 72.)

Koch's allegations are virtually indistinguishable from the monopolization claim rejected in *Apex Oil*. In *Apex Oil*, Apex sold oil futures contracts to defendants for February 1982 delivery. 713 F. Supp. at 593. At the end of the trading month, Apex could not fulfill its delivery requirement and had to purchase oil on the wet market to cover its obligations at

a considerable cost.  *Id.*  Apex sued, alleging that defendants' conspiracy to monopolize the relevant market caused an artificially high price for oil to be delivered in February 1982.  *Id.*  The *Apex Oil* court rejected plaintiffs' monopolization claim as a matter of law.  Apex had not established that "the markets for futures and cash products would be structurally altered.  Both markets had dozens of participants.  Both were vigorously competitive."  *Id.* at 600.  Koch's complaint is no different.  It cannot allege that BPPNA eliminated rivals or competitors or structurally altered the TET propane market in any way.  Just as in *Apex Oil*, BPPNA "arguably planned to put [buyers] in a delivery bind for no more than a few business days from which they might extract premium prices."  *Id.*  That is not monopoly power as a matter of law.

**B.  Koch Cannot Allege That BPPNA Possessed Durable Market Power.**

Koch's monopolization allegations fail for another, independent reason:  Koch cannot allege that BPPNA ever possessed durable market power.  There is no monopoly power absent "a sufficiently long period of monopoly pricing."  *Ashkanazy v. I. Rokeach & Sons, Inc.*, 757 F. Supp. 1527, 1538 (N.D. Ill. 1991).  Ephemeral power to charge monopolistic prices is not enough to sustain a monopolization claim.  *Colo. Interstate Gas*, 885 F.2d at 695-96; *see also Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 252 (D.C. Cir. 1987) (same); *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1190 (5th Cir. 1985) (finding no monopoly power based on defendant's "short-term control over price"); 1 ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 226 (6th ed. 2007).

BPPNA has admitted to manipulating the TET propane market for only 36 days, from February 5, 2004 to March 12, 2004.  (SOF ¶ 1.)  Koch's allegations (and those incorporated by attachment of the Statement of Facts) confirm the fleeting nature of that manipulation.  (*See*

Compl. ¶¶ 79-80; SOF ¶¶ 32, 56, 61, 64.)[3]   BPPNA never obtained any sustained ability to control supply and demand and, therefore, could not dictate the price of TET propane for any significant period.  (Compl. ¶¶ 49, 51, 52; SOF ¶¶ 45, 48.)  As noted, BPPNA's plan itself was premised on its inability to acquire any sustained market power.  BPPNA hoped to profit from a short-term spike in TET prices.  But if even if all went perfectly, BPPNA recognized that the market would quickly adjust to the price spike, and thus BPPNA would have to sell some of its accumulated propane at a *loss* in March.  (Compl. ¶ 38)  Ultimately, BPPNA overestimated its ability to cause and capitalize on even a short term price spike.  As Koch alleges, the average price for TET propane dropped precipitously just days after only a brief, three-day spike, forcing it to sell 4.4 million barrels at a $10 million loss.  (*Id.* ¶¶ 85; SOF ¶ 53, 58, 69, 72.)

At most, Koch's allegations show merely a "temporary" ability to increase TET propane prices, not "significant and more-than temporary harmful effects on competition." *Taylor Publ'g*, 216 F.3d at 482 (quotations and citations omitted); *see also Colo. Interstate Gas*, 885 F.2d at 695-96 (temporary ability to charge monopolistic prices insufficient for monopoly claim).  Monopoly power of far longer duration has been insufficient as a matter of law to establish a claim for monopolization.  *See Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (a "temporary decline" in competition lasting four to ten months did not constitute a monopoly); *Jame Fine Chems., Inc. v. Hi-Tech Pharm. Co.*, No. 00 C 3545, 2007 WL 927976, at *5 (D.N.J. Mar. 27, 2007) (alleged monopoly between five

---

[3] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c); *see also Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment") (quotations and citations omitted); *Lindell v. Huibregtse*, No. 05-4627, 2006 WL 3077484, at *3 (7th Cir. Oct. 31, 2006).

and nine months "is not a sufficiently substantial foreclosure of the relevant market");

*Williamsburg Wax Museum*, 810 F.2d at 252 (no monopoly power where alleged control of the

market lasted twelve months); *Borough of Landsdale v. Phila. Elec. Co.*, 692 F.2d 307, 313

(3d Cir. 1982) (finding fourteen to sixteen months insufficient to show monopoly power);

*Metro Mobile CTS, Inc. v. NewVector Comm'ns*, 661 F. Supp. 1504, 1523-24 (D. Ariz. 1987),

*aff'd*, 892 F.2d 62 (9th Cir. 1989) ("temporary anticompetitive conduct" lasting seventeen

months too short to find monopoly power).

### C. Without Significant Barriers To Entry, BPPNA Could Not And Did Not Achieve Any Monopoly Power.

Koch's complaint also fails to allege any barriers to entry.  This likewise dooms its

monopolization claims.  "[W]here entry is easy, courts rarely find monopoly power . . . because

the threat of entry should prevent the defendant from raising prices to monopoly levels or the fact

of such entry should make any exercise of monopoly power short-lived."  1 ABA SECTION OF

ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 234 (6th ed. 2007) (internal quotations

omitted); *see also Nsight,* 2005 WL 3299164, at *1 (dismissing § 2 claims where plaintiffs failed

to allege sufficient barriers to entry); *Institutional Foods Packing, Inc. v. Creative Prods., Inc.*,

No. 89 C 4499, 1992 WL 111133, at *2 (N.D. Ill. May 12, 1992) (dismissing monopoly claim

where plaintiff "failed to allege a plausible economic theory which would result in [defendant]

precluding new entrants into the manufacturing market"); *Republic Tobacco, L.P. v.

North Atlantic Trading Co.*, No. 98 C 4011, 1999 WL 261712, at *11 (N.D. Ill. April 9, 1999)

(dismissing plaintiff's § 2 claim after finding only conclusory allegations of "significant barriers

to entry").  The Seventh Circuit has "long held that low barriers to competition demonstrate the

absence of monopoly power."  *Ind. Telecom Corp. v. Indiana Bell Tel. Co.*, No. 97-1532-C,

2001 WL 1168169, at *11 (S.D. Ind. Sept. 25, 2001) (citing *Am. Academic Suppliers, Inc. v.*

K&E 13094664.5

*Beckley-Cardey, Inc.*, 922 F.2d 1317, 1320-21 (7th Cir. 1991) (no monopoly power where defendant faced a "'horde of existing competitors'").)

Far from alleging any significant barriers to entry, Koch's complaint recognizes that there were none, and that propane producers began moving propane to the TET market as soon as the price increased.  This included 4.2 million imported barrels entering the U.S.  (SOF ¶ 45.)  The presence and entry of new sellers in the market belies any notion that BPPNA obtained monopoly power under the antitrust laws.

## II. WITHOUT ANY DANGEROUS PROBABILITY OF MONOPOLIZATION, KOCH ALSO CANNOT STATE A CLAIM FOR ATTEMPTED MONOPOLIZATION.

Koch's attempted monopolization claims fail for the same reasons as their monopolization claims.  An attempted monopolization claim under Section 2 of the Sherman Act requires (1) that the defendant engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize, and (3) a dangerous probability of achieving monopoly power.  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *see also Ind. Grocery*, 864 F.2d at 1414.[4]  Because the structure of the TET propane market prevented any monopolization, there was no "dangerous probability" of monopolization.

Without the "capacity to commit the offense" of monopolization, BPPNA had no possibility, let alone a dangerous probability, of monopolizing the TET propane market.  *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 271 (7th Cir. 1981); *see also C.A.T. Indus. Disposal, Inc. v. Browning-Ferris Indus., Inc.*, 884 F.2d 209, 211 (5th Cir. 1989) (finding defendant incapable of "control[ling] prices for any meaningful period, because other

---

[4] *See supra* note 2; *see also Caller-Times Publ'g Co.*, 826 S.W.2d at 580 (observing that "both the Sherman Act and the [TFEAA] cover monopoly and attempted monopoly.").

competitors easily [could] enter the market"); *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112, 114 (3d Cir. 1992) (finding no dangerous probability of monopolization when defendant had two major competitors and other new firms entered the market, preventing defendant "from raising prices for any lengthy period of time"); *Nsight*, 2005 WL 3299164, at *1 (dismissing plaintiff's attempted monopoly claim based only on conclusory allegations of market share and barriers to entry); 1 ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 316 (6th ed. 2007) ("[E]ven a defendant with a relatively high market share may not have a dangerous probability of successfully monopolizing the market if there are no substantial entry barriers").

Courts have consistently rejected attempted monopolization claims where plaintiff's allegations fail to show that a defendant controlled the available supply to the market. In *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 487 (D.C. Cir. 1996), the D.C. Circuit affirmed the district court's dismissal of an attempted monopoly claim where:

> [plaintiff's] own complaint acknowledge[d] that there [were] multiple [] service providers in competition with [defendants], and there [was] no reasonable basis for believing that all other competitors . . . [would] be driven out of business.

*Id.* Unless it can be shown that "existing competitors lack the capacity to increase their output" in response to a defendant's anticompetitive conduct, there is no "dangerous probability of achieving monopoly power." *Axiom Advisers & Consultants, Inc. v. School Innovations & Advocacy Inc.*, No. 2:05 CV 02395, 2006 WL 1049997, at *6 (E.D. Cal. Mar. 20, 2006); *see also Ind. Grocery*, 864 F.2d at 1414 (no attempted monopoly where an attempt by defendant "to curtail the total amount of [supply] . . . could [be] easily offset . . . by importing more . . . from . . . other suppliers"); Frank H. Easterbrook, *Monopoly, Manipulation, and the Regulation of the Futures Markets*, 59 J. BUS. S103, S109 (1986) ("As soon as [traders] learn of the

13

existence of a manipulative strategy, they close their positions . . . Entry and exit are so easy that monopoly cannot thrive [in the futures market].").

Koch has not alleged any of the structural indicia necessary for an attempted monopolization claim.    To the contrary, its complaint recognizes that (i) inventories of TET propane increased throughout February (Compl. ¶¶ 49, 56, 61, 64, 73; SOF ¶¶ 45, 48); (ii) propane imports were moving into the market, thereby precluding any possibility of achieving durable market power (Compl. ¶ 52; SOF ¶ 45); and (iii) BPPNA would necessarily have to sell most of its accumulated supply of propane at a loss in March, when prices collapsed (*see* Compl. ¶ 85; SOF ¶ 53).    *See Republic Tobacco*, 1999 WL 261712, at *11 (dismissing attempted monopoly claim where plaintiff did not allege market characteristics such as "the strength of the competition, the probable development of the industry, the barriers to entry, the nature of the anticompetitive conduct and the elasticity of consumer demand") (citations and quotations omitted).    At most, Koch's allegations show merely a "temporary harmful" price manipulation, not a "dangerous probability" that BPPNA could achieve any monopoly power. *Oxford Global Resource, Inc. v. Weekly-Cessnum*, No. Civ.A. 3:04-CV-0330-N, 2004 WL 2599898, at *2 (N.D. Tex. Nov. 12, 2004) (citing *Taylor Publ'g, Co.* 216 F.3d at 474, and quoting 3 PHILLIP AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 651 at 82 (1996)). In sum, Koch has no attempted monopolization claim.

## III.    BECAUSE KOCH CAN SEEK A REMEDY UNDER THE CEA, THEIR ANTITRUST CLAIMS SHOULD BE DISMISSED.

Even apart from the legal infirmities in Koch's antitrust claims, they would have to be dismissed.    Where a specific statutory regime exists providing a plaintiff damages "there may be no recovery of treble damages under the antitrust laws." *Schaefer v. First Nat'l Bank of Lincolnwood*, 326 F. Supp. 1186, 1191 (N.D. Ill. 1970), *aff'd*, 509 F.2d 1287

(7th Cir. 1975) (quoting *S.S.W., Inc. v. Air Transp. Ass'n of Am.*, 191 F.2d 658, 663 (D.C. Cir.

1951); *see also Matter of Hartman Bros. Const. Corp.*, 835 F.2d 1215, 1217 (7th Cir. 1987)

("[s]pecific terms prevail over the general in the same or another statute which otherwise might

be controlling") (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932));

*Tri-Tronics Co. v. MacGregor & Co.* No. 90 C 0630, 1990 WL 114738, at *2 (N.D. Ill. July 25,

1990); *Terminal Warehouse Co. v. Penn. R. Co.*, 297 U.S. 500, 514-15 (1936) (finding plaintiff

could not collect treble damages under antitrust statutes where it was eligible for relief under the

Interstate Commerce Act); *U.S. Navigation Co. v. Cunard S.S. Co.*, 284 U.S. 474, 485 (1932)

(finding that the remedy offered by the 1916 Shipping Act superceded that of the antitrust

statutes).  Because the CEA provides a remedy directed to the specific conduct at issue, Koch

cannot pursue treble damages under the antitrust laws based on that same conduct.

In *Schaefer*, plaintiffs brought suit under the securities laws and the Sherman Act after

defendants allegedly manipulated stock prices.  326 F. Supp. at 1188.  The court found the

securities laws provided a specific remedy for price manipulation, and thus dismissed the

antitrust claims:

> The settled rule of statutory construction is that, where there is
> a special statutory provision affording a remedy for particular
> specific cases and where there is also a general provision which is
> comprehensive enough to include what is embraced in the former,
> the special provision will prevail over the general provision, and
> the latter will be held to apply only to such cases as are not within
> the former.

*Id.* at 1190 (citations and quotations omitted) .  To hold otherwise would allow the Sherman Act

to "evade[] and effectively nullif[y]" the "damage restrictions contained in the carefully drawn

prohibitions against market manipulation" that Congress had created.  *Id.* at 1192.

The Seventh Circuit affirmed, finding that "[b]y electing to make their claim for relief

under the securities acts, the plaintiffs have rendered their antitrust claims superfluous."

*Schaefer*, 509 F.2d at 1300; *see also In re TransOcean Tender Offer Sec. Litig.*, 427 F. Supp. 1208, 1210 (N.D. Ill. 1977) (dismissing antitrust claims because "the securities laws protect plaintiffs against the acts [of market manipulation] and when, as here, plaintiffs have elected to pursue said claims under these laws, the antitrust claims are superfluous at best"). Similarly, in *Smith v. Groover*, 468 F. Supp. 105, 116 (N.D. Ill. 1979), the Court dismissed plaintiffs' antitrust claims as "superfluous," holding the CEA provided the "specialized remedy" for their claims.  (citing *Schaefer*, 509 F.2d at 1300); *see also Ricci v. Chi. Mercantile Exch.*, 447 F.2d 713, 719-20 (7th Cir. 1971), *aff'd*, 409 U.S. 289 (1973) (noting "a potential repugnance between a decision of the Commodity Exchange Commission and the award of treble damages in an antitrust action.").[5]

The CEA provides, under 7 U.S.C. § 25(a)(1)(D), the specific statutory remedy for the price manipulation claims that Koch alleges.  Indeed, other direct purchaser plaintiffs have asserted a claim arising under the CEA for the exact same alleged conduct.  Allowing Koch to seek treble damages under the Sherman Act would be a "superfluous" end-run around the statutory provisions of the CEA.  *Smith*, 468 F. Supp. at 116 (citing *Schaefer*, 509 F.2d at 1300).

## IV.     KOCH'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

Unjust enrichment allows recovery when a defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."     *HPI Health Care Servs., Inc. v.*

---

[5] The legislative history of the CEA lends further support to the case law.  "Congress specifically rejected proposed amendments to create treble damages liability for violations of the CEA."  John Kern, *Price Manipulation in the Commodity Futures Markets: A Reexamination of the Justifications for Simultaneous Causes of Action Under the CEA and the Sherman Act*, 34 UCLA L. Rev. 1305, 1311 (1987) (citing S. 2578, 93d Cong., 1st Sess. § 20 (1973) and S. 2837, 93d Cong., 1st Sess. § 505 (1973)).

*Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989); *Kovilic v. City of Chi.*, 813 N.E.2d 1046, 1053-54 (Ill. App. Ct. 2004).[6]   Koch cannot state a claim based on unjust enrichment because the CEA provided Koch an adequate remedy at law.

No claim can lie for unjust enrichment when there is an adequate remedy at law. *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) (citing *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. App. Ct. 1995)); 66 AM. JUR. 2D *Restitution and Implied Contracts* § 30 (2008).[7]   As previously discussed in Section III above, the CEA provides for an independent cause of action for the conduct at issue (indeed, other direct purchaser plaintiffs have brought such a claim).  The CEA provides private remedies for anyone damaged by a violation of the statute.  7 U.S.C. § 25(a)(1)(A)-(D).  The statutory claim under the CEA precludes Koch's equitable claim as a matter of law.

## CONCLUSION

BPPNA requests that the Court dismiss Koch's Complaint in its entirety.

---

[6] While plaintiffs' allegations focus on the acts of BPPNA's NGL Trading Bench located in Houston, Texas, this action is pending in the Northern District of Illinois, where defendant BPPNA is headquartered.  For purposes of this motion, the same analysis applies whether Illinois or Texas law applies.  *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage"); *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. Ct. App. 2004).

[7] Texas law on this point is the same.  *See Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998) (dismissing account of "Restitution to Prevent Unjust Enrichment" under Texas law; holding that in order to recover under that equitable theory, plaintiff must have no adequate remedy at law) (citing *Hoarel Sign Co. v. Dominion Equity Corp.*, 910 S.W.2d 140, 143 (Tex. Ct. App. 1995)); *see also Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007).

Date:   August 6, 2008                        Respectfully submitted,

                                              /s/ Kathryn F. Taylor
                                              Richard C. Godfrey, P.C.
                                              David J. Zott, P.C.
                                              Andrew A. Kassof
                                              Katheleen A. Ehrhart
                                              Kathryn F. Taylor
                                              KIRKLAND & ELLIS LLP
                                              200 East Randolph Drive
                                              Chicago, IL  60601-6636

                                              *Attorneys for Defendant*
                                              *BP Products North America, Inc.*

K&E 13094664.5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **DEFENDANT BP PRODUCTS NORTH AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS** was filed electronically pursuant to the CM/ECF procedures on August 6, 2008, and will, therefore, be served electronically upon the parties in the action, and served via U.S. mail, first class, postage prepaid, upon:

        Mark C. Harwell, Esq.
        Cotham, Harwell & Evans, P.C.
        1616 South Voss, Suite 200
        Houston, TX  77057
        Telephone:    (713) 647-7511
        Facsimile:    (713) 647-7512

        /s/ Kathryn F. Taylor
        Kathryn Taylor